**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

RAYVEN EDWARDS, Individually and
As Parent and Next Friend of M.J., a Minor
4105 West Street NW, Apt. 201
Washington, DC 20007

and

STEPHON M. JETER, Individually and                    Case No.:
as Parent and Next Friend of M.J., a Minor
4105 West Street NW, Apt. 201
Washington, DC 20007

                              Plaintiffs,

v.

AMAZON.COM, INC.
410 Terry Avenue North
Seattle, WA 98109

and

AMAZON.COM SALES, INC.
410 Terry Avenue North
Seattle, WA 98109

and

AMAZON.COM SERVICES, LLC
410 Terry Avenue North
Seattle, WA 98109

and

KALLABE INC.
14205 SE 36th St., Suite 100
Bellevue, WA 98006

                              Defendants.

## COMPLAINT AND REQUEST FOR JURY TRIAL

COME NOW Plaintiffs, Rayven Edwards and Stephon Jeter, individually and as parents

and next friends of M.J., a minor, by and through counsel, Steven H. Heisler, Esquire, and the Law

Offices of Steven H. Heisler, and hereby file this Complaint and allege as follows:

1

## INTRODUCTION

1. On May 5, 2024 at approximately 8:00 P.M., M.J., then eighteen (18) months old, ingested a button battery that fell out of a remote control for a Kallabe Full Size Bed Frame and Headboard with LED Lights. The button battery came to be lodged in M.J.'s esophagus and later was required to be surgically extracted. As a result, M.J. suffered severe tissue damage to his esophagus, including a perforation of the esophagus.

2. The dangers to young children posed by button batteries have been extensively documented in recent years. Consumer watch groups, pediatricians, the media, and the electronics industry have come together to mandate that electronics manufacturers employ relatively-inexpensive alternative designs to prevent young children like M.J. from accessing and ingesting the batteries. The industry standard requires manufacturers to design battery compartments such that button batteries may only be accessed by using a tool or multiple simultaneous maneuvers.

3. The subject remote's battery compartment as designed, manufactured, and sold by the Defendants in this case failed to require a tool or independent simultaneous maneuvers to access it. As a result, 18 month-old M.J. was able to access the button battery, ingest it orally, and suffer extensive, permanent injuries to the esophagus. Accordingly, the Plaintiffs bring this lawsuit based on the design defects, manufacturing defects, negligence, failures to warn, breaches of warranties and negligent undertaking that led to the serious injury to M.J.

## PARTIES AND JURISDICTION

4. Plaintiff Rayven Edwards is a resident of the District of Columbia.

5. Plaintiff Stephon Jeter is a resident of the District of Columbia.

6. Plaintiffs Rayven Edwards and Stephon Jeter (hereinafter collectively the "Plaintiffs") are the natural parents and legal guardians of Plaintiff M.J., a minor (hereinafter "M.J." or the "minor Plaintiff").

7. Defendant Amazon.com, Inc. (hereinafter "Defendant Amazon.com" or "Amazon.com") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

8. Defendant Amazon.com Sales, Inc. (hereinafter "Defendant Amazon Sales" or "Amazon Sales") is a Delaware corporation authorized to do business in the State of Maryland with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

9. Defendant Amazon.com Services, LLC (hereinafter "Defendant Amazon Services" or "Amazon Services") is a Delaware limited liability company authorized to do business in the State of Maryland with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

10. Upon information and belief, Amazon.com, Amazon Sales, and Amazon Services (hereinafter collectively referred to as the "Amazon Defendants" or "Amazon") collectively own, manage, and oversee the operations of the online marketplace known as Amazon.com. In addition to facilitating third-party sales, Amazon is actively engaged in the business of designing, manufacturing, producing, assembling, importing, marketing, packaging, labeling, distributing, selling and/or otherwise placing into the stream of commerce various consumer products, including the Kallabe Full Size Bed Frame and Headboard with LED Lights and USB Ports and accompanying remote control that form the subject of this action.

11.     Defendant Kallabe Inc. (hereinafter "Defendant Kallabe" or "Kallabe") is a corporation organized and existing under the laws of the State of Washington, with its principal place of business located at 14205 SE 36th Street, Suite 100, Bellevue, Washington 98006.

12.     Upon information and belief, at all times relevant hereto, Defendant Kallabe was engaged in the business of designing, manufacturing, producing, assembling, importing, marketing, packaging, labeling, distributing, selling and/or otherwise placing into the stream of commerce various consumer products, including the Kallabe Full Size Bed Frame and Headboard with LED Lights and USB Ports and accompanying remote control that form the subject of this action.

13.     The Amazon Defendants and Defendant Kallabe have purposefully availed themselves of the privilege of conducting business activities within the State of Maryland by placing products, including the Kallabe Full Size Bed Frame and Headboard with LED Lights and USB Ports and accompanying remote control that form the subject of this action, into the stream of commerce and by advertising their products and/or establishing retail facilities within the state.

14.     The Amazon Defendants and Defendant Kallabe derive substantial revenue from goods sold and used in the State of Maryland.

15.     The Amazon Defendants and Defendant Kallabe do reasonably expect, or should reasonably expect, that their business activities could or would have consequences within the State of Maryland.

16.     The Amazon Defendants and Defendant Kallabe have established continuous and systematic contacts with the State of Maryland sufficient to confer general jurisdiction, which will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

4

17.    This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. §1332 as the parties in this matter are citizens and corporations of different states and the matter in controversy exceeds the sum or value of $75,000.00.

18.    Venue is proper in this division because a substantial portion of the events or omissions giving rise to the Plaintiffs' claims occurred in Baltimore County, Maryland, which is in the Northern Division.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

19.    At some time prior to March 29, 2024, Defendant Kallabe, in concert with the Amazon Defendants in agency or otherwise, designed, manufactured, produced, imported, assembled, marketed, packaged, labeled, distributed, sold and/or otherwise placed into the stream of commerce the Kallabe Full Size Bed Frame and Headboard with LED Lights and USB Ports (hereinafter the "subject Kallabe bed") and accompanying remote control (hereinafter the "subject remote") that form the subject of this action.

 

20.    On or about March 29, 2024, Plaintiff Stephon Jeter purchased the subject Kallabe bed and remote from Defendant Amazon.com (Order No. 111-8407043-1414662).

5

21. Given the size and reputation of Amazon as a trustworthy online marketplace, Plaintiff Stephon Jeter believed the subject Kallabe bed and remote were safe to use as warranted by Amazon's website. However, unbeknownst to Plaintiff Stephon Jeter, the subject remote that he purchased was designed with a dangerous flaw. The battery compartment on the back of the subject remote was designed to easily open, revealing a small lithium button battery which invariably comes loose and falls out.

22. Due to their size and shape, button batteries pose a particular hazard to children under the age of four (4) because of their smaller and narrower esophagus, coupled with their tendency to place objects in their mouths. When button batteries become lodged in the esophagus, they react quickly with saliva. The saliva triggers an electric current which causes a chemical reaction that can severely burn the esophagus in as little as two hours, creating an esophageal perforation, vocal cord paralysis, or even erosion into the airway, or major blood vessels.

23. The dangers of button battery ingestion and the need to properly design devices to secure them from toddlers are well known in the manufacturing industry. According to the Consumer Product Safety Commission ("CPSC"), based on information in the National Electronic Injury Surveillance System (NEISS), from 2011–2021 approximately 54,300 emergency room visits and 25 deaths were associated with human ingestion, impaction, or insertion of button cell or coin batteries. The data show that these incidents occur most often with children aged 4 years or younger.

24. In February 2015, years before the subject remote was designed, manufactured, shipped, distributed, delivered, marketed, advertised, sold and placed into the stream of commerce by Defendant Kallabe and the Amazon Defendants, Underwriters Laboratories ("UL") published UL 4200A, *Standard for Safety for Products Incorporating Button Batteries or Coin Cell*

*Batteries*. UL 4200A is a safety standard that governs the design and requirements needed for products that utilize lithium-ion button cell batteries. As such, the subject remote would fall under this standard. UL 4200A requires that "[p]roducts that locate removeable or replaceable button/coin cell batteries inside a battery compartment shall be designed to prevent children from removing the battery by one of the following methods: (a) a tool such as a screwdriver or coin is required to open the battery compartment [or] (b) the battery compartment door or cover requires the application of two independent and simultaneous movements to open by hand."

25.     The Amazon Defendants voluntarily undertake to provide a number of safety-related services for the benefit of individuals who use products purchased through Amazon's website. Amazon's purported goal in offering these services has been to fully vet the safety and reliability of not just the products being sold on Amazon's website, but also the sellers whose products were being sold. Amazon's affirmative representations of reliability and its sales-enhancing services were in place long before the subject remote was purchased, and they distinguished Amazon from other online marketplaces that acted as hands-off platforms, instead establishing that Amazon's self-chosen role was that of an active marketplace regulator. Amazon has held that role during all times relevant hereto.

26.     Amazon provided extensive details on its voluntary undertaking in a post it made on its own website in 2019:[1]

> "Amazon strives to be Earth's most customer-centric company, where people can find and discover the widest possible selection of safe and authentic goods, and we work hard to earn and maintain your trust. In 2018 alone, we invested over $400 million to protect our store and our customers and built robust programs to ensure products offered are safe, compliant, and authentic. Amazon offers customers hundreds of millions of items, and we have developed, and continuously refine and improve, our tools that prevent suspicious, unsafe, or non-compliant products from being listed in our store.

---

[1] https://www.aboutamazon.com/news/company-news/product-safety-and-compliance-in-our-store

*Our proactive measures begin when a seller attempts to open an account. Our new seller account vetting includes a number of verifications and uses proprietary machine learning technology that stops bad actors before they can register or list a single product in our store.* All products offered in our stores must comply with applicable laws and regulations, and our own policies. For example, we require toys to be tested to relevant safety standards set by the Consumer Product Safety Commission. *We have a dedicated global team of compliance specialists that review submitted safety documentation, and we have additional qualification requirements that sellers must meet to offer products.* In 2018, our teams and technologies proactively blocked more than three billion suspect listings for various forms of abuse, including non-compliance, before they were published to our store.

*Once a product is available in our store, we continuously scan our product listings and updates to find products that might present a concern.* Every few minutes, our tools review the hundreds of millions of products, scan the more than five billion attempted daily changes to product detail pages, and analyze the tens of millions of customer reviews that are submitted weekly for signs of a concern and investigate accordingly. Our tools use natural language processing and machine learning, which means new information is fed into our tools daily so they can learn and constantly get better at proactively blocking suspicious products.

*In addition, we provide a number of ways for regulatory agencies, industry organizations, brands, customers, and our customer service teams to report safety issues. When we receive these reports, we move quickly to protect customers, remove unsafe products from our store, and investigate. For example, if a customer reports a concern with a product, a customer service associate can instantly trigger an investigation.* Additionally, because of our direct relationships with customers, we are able to trace and directly notify customers who purchased a particular product online and alert them to a potential safety issue—our systems are far more effective than other online and offline retailers and customers can feel confident they'll have the information they need. [...] *We invest significant resources to protect our customers and have built robust programs designed to ensure products offered for sale in our store are safe and compliant.* We want customers to shop with confidence and if ever a customer has a concern, they can contact our customer service team, and we will investigate."

27.    Other related services that Amazon offers for the benefit of users include: approval of all Fulfillment by Amazon ("FBA") products; provision of 24/7 customer service; receiving and processing all FBA product returns (during which time Amazon inspects the FBA product and determines whether the product can be resold); and categorizing FBA products with the help of

8

both employees and computers/robots, labeling FBA products, and moving them through the distribution process.

28.    The contracts between Amazon and its merchants state that Amazon: (a) has the authority to format the product's listing on its online marketplace, which includes how a listing is displayed to consumers; (b) may reject products that Amazon determines are illegal, sexually explicit, defamatory, or obscene; and (c) will require merchants to communicate with their customers exclusively through Amazon's platform, which enables customers to provide user comment reviews on a product's web page listing.

29.    Amazon has an established history of monitoring the safety of the products on its website and taking unilateral action to remove dangerous products from the available listings and to warn consumers who purchased such products of the potential hazards they present. At all relevant times, Amazon maintained the same kind of control over the subject Kallabe bed and remote. The unsafe condition of the subject remote's battery compartment was one that a basic investigation by Amazon would have easily and quickly revealed. Despite this, Amazon did nothing to mitigate the risks posed by the subject remote as designed.

30.    On or about April 8, 2024, the Amazon Defendants delivered the subject Kallabe bed and subject remote to Plaintiff Stephon Jeter's then home in Baltimore County, Maryland.

31.    On May 5, 2024 at approximately 8:00 P.M., M.J., then eighteen (18) months old, was lying in the subject Kallabe bed watching cartoons when he picked up the subject remote and began pressing the buttons that controlled the LED lights located in the headboard. When Plaintiff Stephon Jeter saw this, he took the remote from M.J. and placed it on a desk on the other side of the bedroom. Several minutes later, Plaintiff Stephon Jeter noticed that M.J. had vomited on the bed and was holding his neck and coughing.

32.     In response, Plaintiff Stephon began searching the room to determine what M.J. could have swallowed when he noticed the empty battery slot for the subject remote on the floor of the bedroom. Plaintiff Stephon then began looking for the battery and, when he did not find it, immediately drove M.J. to the Greater Baltimore Medical Center in Towson, Maryland where x-rays confirmed the presence of a round metallic foreign body lodged in M.J.'s esophagus.



33.     As a result, M.J. was transferred to the Johns Hopkins Children's Center in Baltimore, Maryland where he was admitted and immediately underwent a surgical procedure to remove the button battery from his esophagus.

34.     As a direct and proximate result of the aforementioned, the minor Plaintiff sustained severe personal injuries which have caused and will in the future cause him to endure great physical pain, suffering, loss of enjoyment of life, mental anguish, emotional distress, physical impairment and permanent disfigurement, and which have caused and will continue to cause the Plaintiffs to incur expenses for medical services.

35.     The button battery in question fell out of the subject remote because the sliding door to the remote's battery access cover had inadequate safety precautions to prevent the access

10

cover from easily opening. Although some instructions are included on the back of the subject remote that suggest the existence of safety features, in reality, they failed to function entirely because they did not and would not keep the battery secure in the subject remote and out of the hands of small children, like the minor Plaintiff. Notably, opening the actual remote does not require a two-step method of opening the battery access cover; a single finger pulling the access cover easily slides it open to expose and release the battery. This dangerous and easy access is caused by an unreasonably dangerous design in the subject remote.

## COUNT I – STRICT LIABILITY – DESIGN DEFECT
### (Against Defendant Kallabe and the Amazon Defendants)

36. Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

37. Defendant Kallabe and the Amazon Defendants designed, manufactured, shipped, distributed, delivered, marketed, advertised, sold and placed the subject remote into the stream of commerce as part of the normal course of business.

38. The subject remote was placed into the stream of commerce by Defendant Kallabe and the Amazon Defendants in a defective and unreasonably dangerous condition in that the design of the subject remote's battery compartment does not require the use of a tool or a two-step method of opening the battery access cover as required by applicable law and industry standards including, but not limited to, UL 4200A. Instead, as designed, the battery tray compartment can be easily pulled out with a single movement without the need to pinch the lever simultaneously.

39. The potential for severe injuries caused by the subject remote was known or should have been known to Defendant Kallabe and the Amazon Defendants prior to design, manufacture, distribution, advertising, sale, delivery to, and use by, the Plaintiffs, and significantly outweighs

11

the burden or cost of taking additional safety precautions to ensure that the type of occurrence that injured the minor Plaintiff does not occur

40. At the time the subject remote was designed and manufactured, there were safer alternative designs available that were economically feasible that would have prevented the incident involving M.J., namely designs that require the use of a screwdriver or coin to access the subject remote's battery compartment.

41. Defendant Kallabe and the Amazon Defendants expected and intended that the subject remote would reach consumers, users, and operators, such as the Plaintiffs, and be used in the condition in which it was distributed/placed into the stream of commerce, and by that means, exposed the Plaintiffs and the public at large to a risk of injury resulting from the inherent defective condition of the product.

42. The subject remote was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold, and unexpectedly failed to perform safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable manner.

43. At all times relevant hereto, the subject remote was being used in a foreseeable manner and for its intended purpose and the Plaintiffs were unaware of any defects in the subject remote or of any danger of the button battery located within the subject remote.

44. The defective and unreasonably dangerous condition of the subject remote was the direct and sole proximate cause of the minor Plaintiff's injuries and damages which include, but are not limited to, past, present and future physical and emotional pain and suffering, mental anguish and emotional distress, permanent disability, physical impairment, disfigurement, loss of

bodily function, and other nonpecuniary injuries. If the subject remote had not been defectively designed, the minor Plaintiff would not have sustained the injuries and damages that he did.

45.    The defective and unreasonably dangerous condition of the subject remote was the direct and sole proximate cause of Plaintiffs Rayven Edwards and Stephon Jeter damages which include, but are not limited to, past, present and future medical expenses, lost wages and other out-of-pocket expenses arising out of the injuries sustained by M.J.  Plaintiffs have also missed time from work and incurred transportation costs and other expenses taking M.J. for medical care and treatment arising out of the injuries he suffered. If the subject remote had not been defectively designed, the Plaintiffs would not have sustained the damages that they did.

WHEREFORE, Plaintiffs, Rayven Edwards and Stephon Jeter, individually and as parents and next friends of M.J., a minor, demand judgment against the Amazon Defendants and Defendant Kallabe, jointly and severally, in an amount to exceed $75,000, plus interest, attorneys' fees and the costs of this action, punitive damages and such other relief as this Honorable Court deems just and proper.

## COUNT II – STRICT LIABILITY – MANUFACTURING DEFECT
### (Against Defendant Kallabe and the Amazon Defendants)

46.    Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

47.    Defendant Kallabe and the Amazon Defendants designed, manufactured, shipped, distributed, delivered, marketed, advertised, sold and placed the subject remote into the stream of commerce as part of the normal course of business.

48.    The subject remote was placed into the stream of commerce by Defendant Kallabe and the Amazon Defendants in a defective and unreasonably dangerous condition in that it contained a latent manufacturing defect that allowed the battery compartment on the back of the

13

subject remote to be removed by application of a single pull force to the slider in violation of applicable law and industry standards.

49.     Defendant Kallabe and the Amazon Defendants expected and intended that the subject remote would reach consumers, users, and operators, such as the Plaintiffs, and be used in the condition in which it was distributed/placed into the stream of commerce, and by that means, exposed the Plaintiffs and the public at large to a risk of injury resulting from the inherent defective condition of the product.

50.     The subject remote was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold, and unexpectedly failed to perform safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable manner.

51.     At all times relevant hereto, the subject remote was being used in a foreseeable manner and for its intended purpose and the Plaintiffs were unaware of any defects in the subject remote or of any danger of the button battery located within the subject remote.

52.     The defective and unreasonably dangerous condition of the subject remote was the direct and sole proximate cause of the minor Plaintiff's injuries and damages which include, but are not limited to, past, present and future physical and emotional pain and suffering, mental anguish and emotional distress, permanent disability, physical impairment, disfigurement, loss of bodily function, and other nonpecuniary injuries. If the subject remote had not been defectively manufactured, the minor Plaintiff would not have sustained the injuries and damages that he did.

53.     The defective and unreasonably dangerous condition of the subject remote was the direct and sole proximate cause of Plaintiffs Rayven Edwards and Stephon Jeter damages which include, but are not limited to, past, present and future medical expenses, lost wages and other out-

of-pocket expenses arising out of the injuries sustained by M.J. Plaintiffs have also missed time from work and incurred transportation costs and other expenses taking M.J. for medical care and treatment arising out of the injuries he suffered. If the subject remote had not been defectively manufactured, the Plaintiffs would not have sustained the damages that they did.

WHEREFORE, Plaintiffs, Rayven Edwards and Stephon Jeter, individually and as parents and next friends of M.J., a minor, demand judgment against the Amazon Defendants and Defendant Kallabe, jointly and severally, in an amount to exceed $75,000, plus interest, attorneys' fees and the costs of this action, punitive damages and such other relief as this Honorable Court deems just and proper.

## COUNT III – STRICT LIABILITY – FAILURE TO WARN
### (Against Defendant Kallabe and the Amazon Defendants)

54.     Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

55.     Defendant Kallabe and the Amazon Defendants designed, manufactured, shipped, distributed, delivered, marketed, advertised, sold and placed the subject remote into the stream of commerce as part of the normal course of business.

56.     The subject remote was placed into the stream of commerce by Defendant Kallabe and the Amazon Defendants in a defective and unreasonably dangerous condition in that it did not contain adequate safety markings and warnings regarding the use of the subject remote in violation of applicable law and industry standards. Specifically, the subject remote failed to comply with UL 4200A which requires warning labels in several locations, including on the battery-containing product itself, on the product's packaging, and in accompanying literature. Those warning labels must clearly identify the hazard of ingesting button batteries, instruct consumers to keep such

15

batteries away from children, and instruct consumers to seek immediate medical attention if a button battery is ingested.

57. Defendant Kallabe and the Amazon Defendants expected and intended that the subject remote would reach consumers, users, and operators, such as the Plaintiffs, and be used in the condition in which it was distributed/placed into the stream of commerce, and by that means, exposed the Plaintiffs and the public at large to a risk of injury resulting from the inherent defective condition of the product.

58. The subject remote was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold, and unexpectedly failed to perform safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable manner.

59. At all times relevant hereto, the subject remote was being used in a foreseeable manner and for its intended purpose and the Plaintiffs were unaware of any defects in the subject remote or of any danger of the button battery located within the subject remote.

60. The defective and unreasonably dangerous condition of the subject remote was the direct and sole proximate cause of the minor Plaintiff's injuries and damages which include, but are not limited to, past, present and future physical and emotional pain and suffering, mental anguish and emotional distress, permanent disability, physical impairment, disfigurement, loss of bodily function, and other nonpecuniary injuries. If the subject remote had contained or been accompanied by adequate safety markings and warnings, the minor Plaintiff would not have sustained the injuries and damages that he did.

61. The defective and unreasonably dangerous condition of the subject remote was the direct and sole proximate cause of Plaintiffs Rayven Edwards and Stephon Jeter damages which

16

include, but are not limited to, past, present and future medical expenses, lost wages and other out-of-pocket expenses arising out of the injuries sustained by M.J. Plaintiffs have also missed time from work and incurred transportation costs and other expenses taking M.J. for medical care and treatment arising out of the injuries he suffered. If the subject remote had contained or been accompanied by adequate safety markings and warnings, the Plaintiffs would not have sustained the damages that they did.

WHEREFORE, Plaintiffs, Rayven Edwards and Stephon Jeter, individually and as parents and next friends of M.J., a minor, demand judgment against the Amazon Defendants and Defendant Kallabe, jointly and severally, in an amount to exceed $75,000, plus interest, attorneys' fees and the costs of this action, punitive damages and such other relief as this Honorable Court deems just and proper.

## COUNT IV – BREACH OF EXPRESS AND IMPLIED WARRANTIES
### (Against Defendant Kallabe and the Amazon Defendants)

62.  Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

63.  Defendant Kallabe and the Amazon Defendants designed, manufactured, shipped, distributed, delivered, marketed, advertised, sold and placed the subject remote into the stream of commerce as part of the normal course of business.

64.  At all times relevant hereto, Defendant Kallabe and the Amazon Defendants expressly and impliedly warranted that the subject remote was of merchantable quality and reasonably fit for the particular purposes for which it was intended to be used, and that it was safe for such use.

65.  The Plaintiffs made ordinary use of the subject remote in reliance on said warranties.

17

66.     Contrary to said warranties, the subject remote was defective and unfit for its ordinary and foreseeable purposes and was not of good and merchantable quality, rendering it unreasonably dangerous.

67.     By reason of and as a direct and proximate consequence of Defendant Kallabe and the Amazon Defendants' breach of express and implied warranties, the Plaintiffs suffered the injuries and damages as set forth herein, for which the Defendants are liable.

68.     The injuries and damages were caused by the negligence of Defendant Kallabe and the Amazon Defendants with no negligence on the part of the Plaintiffs contributing thereto.

69.     The Plaintiffs notified Defendant Kallabe and the Amazon Defendants of the breach of warranty within a reasonable time after discovering the breach and prior to filing this action.

WHEREFORE, Plaintiffs, Rayven Edwards and Stephon Jeter, individually and as parents and next friends of M.J., a minor, demand judgment against the Amazon Defendants and Defendant Kallabe, jointly and severally, in an amount to exceed $75,000, plus interest, attorneys' fees and the costs of this action, punitive damages and such other relief as this Honorable Court deems just and proper.

## COUNT V – NEGLIGENCE
### (Against Defendant Kallabe and the Amazon Defendants)

70.     Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

71.     At all times relevant hereto, Defendant Kallabe and the Amazon Defendants owed consumers and/or foreseeable users, including the Plaintiffs, a duty of reasonable care in the design, manufacture, assembly, testing, labeling, marketing, distribution and sale of the subject remote.

18

72.    Defendant Kallabe and the Amazon Defendants were negligent, grossly negligent, reckless, willful and wanton, and breached the duties owed to the Plaintiffs in one or more of the following particulars, to wit:

(a)    In designing and manufacturing the subject remote in such a way that it was unfit and unsafe for its intended use;

(b)    In placing the subject remote into the stream of commerce when they knew, or should have known, it was unreasonably dangerous and unsafe for its intended use;

(c)    In placing into the stream of commerce a product, namely the subject remote, that was defective in design in that the design of the subject remote's battery compartment does not require the use of a tool or a two-step method of opening the battery access cover as required by applicable law and industry standards including, but not limited to, UL 4200A;

(d)    In failing to implement safer, technologically feasible, and economically practical design alternatives or processes for the subject remote;

(e)    Defendant Kallabe and the Amazon Defendants knew or should have known of feasible alternative designs that would have significantly reduced and/or eliminated the risks posed by children removing button batteries from household consumer products, such as a the subject remote, and ingesting the batteries;

(f)    In failing to protect foreseeable users of the subject remote from the dangers present in the use of such product, which dangers Defendant Kallabe and the Amazon Defendants knew or should have known existed;

(g)    The subject remote, as sold, posed a risk of unreasonable harm to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility;

(h)    In placing into the stream of commerce a product, namely the subject remote, that was defective in that it failed to contain adequate warnings and instructions;

(i)    In failing to adequately instruct and/or adequately warn users and consumers, including the Plaintiffs, of the dangerous propensities in the design of the subject remote, and of the safe and proper method of use of the subject remote;

19

(j)    In failing to exercise that degree of due care which a reasonably prudent designer, manufacturer, distributor and seller would have exercised under the same or similar circumstances; and

(k)    In being otherwise negligent, grossly negligent, reckless, willful, and wanton as will be revealed through discovery.

73.    Defendant Kallabe and the Amazon Defendants knew or should have known that consumers, including the Plaintiffs, would suffer injury because of Defendant Kallabe and the Amazon Defendants' failure to exercise reasonable care as described above.

74.    The Plaintiffs neither contributed to the negligence which caused the injury nor assumed the risk of the injuries sustained.

75.    The aforesaid negligent, grossly negligent, willful, wanton, reckless, and unlawful acts and/or omissions of Defendant Kallabe and the Amazon Defendants were the direct and sole proximate cause of the minor Plaintiffs' injuries and damages which include, but are not limited to, past, present and future physical and emotional pain and suffering, mental anguish and emotional distress, permanent disability, physical impairment, disfigurement, loss of bodily function, and other nonpecuniary injuries.

76.    The aforesaid negligent, grossly negligent, willful, wanton, reckless, and unlawful acts and/or omissions of Defendant Kallabe and the Amazon Defendants were the direct and sole proximate cause of Plaintiffs Rayven Edwards and Stephon Jeter damages which include, but are not limited to, past, present and future medical expenses, lost wages and other out-of-pocket expenses arising out of the injuries sustained by M.J. Plaintiffs have also missed time from work and incurred transportation costs and other expenses taking M.J. for medical care and treatment arising out of the injuries he suffered.

WHEREFORE, Plaintiffs, Rayven Edwards and Stephon Jeter, individually and as parents and next friends of M.J., a minor, demand judgment against the Amazon Defendants and

20

Defendant Kallabe, jointly and severally, in an amount to exceed $75,000, plus interest, attorneys' fees and the costs of this action, punitive damages and such other relief as this Honorable Court deems just and proper.

## COUNT VI – NEGLIGENT UNDERTAKING
### (Against the Amazon Defendants)

77.    Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

78.    At all times relevant hereto, the Amazon Defendants had voluntarily undertaken to thoroughly vet the safety and reliability of: 1) all sellers who were listing products on Amazon's website and 2) all products being sold on Amazon's website. Amazon had also voluntarily undertaken to thoroughly investigate all reports of dangerous products on its website, and to protect individuals who used products purchased through Amazon by notifying them of unsafe products. These services were undertaken by Amazon for the benefit of all individuals who used products that had been purchased through Amazon's website.

79.    The subject remote was a product being sold on Amazon's website, and Amazon had voluntarily undertaken to fully vet the safety and reliability of that product before it was listed on Amazon's website.

80.    Upon information and belief, the Amazon Defendants require, have required, or should require vendors on its platform, or its partners, agents, or joint-venturers, to abide by safety standards, including but not limited to those provided by UL or others about replacement batteries, and warning and for securing mechanisms for products that contain button batteries.

81.    The Amazon Defendants acted as a gatekeeper to keep its customers safe and can exert pressure on upstream suppliers and agents to enhance safety. Having accepted the role and undertaking of looking out for consumer safety, the Amazon Defendants owed a duty to exercise

21

reasonable care to protect that undertaking. Consumers have come to expect that they can buy safe products from the Amazon Defendants including on any Amazon platform.

82.     Although Amazon knew or should have known the above-described safety-related services were necessary for consumer's, including the Plaintiffs, protection, it failed to exercise reasonable care in performing those services, thereby violating the above duties. Specifically, Amazon:

(a)     failed to properly vet Defendant Kallabe;

(b)     failed to properly vet the subject remote;

(c)     exposed and introduced the Plaintiffs to a dangerous product by recruiting Defendant Kallabe to sell on Amazon;

(d)     failed to ensure that the subject remote met minimum standards for the industry including, but not limited to, UL 4002A;

(e)     exposed and introduced the Plaintiffs, and specifically M.J., to a dangerous product by allowing the subject remote to be listed on Amazon's website;

(f)     failed to warn consumers, including the Plaintiffs, about the unreasonably dangerous latent condition of the subject remote of which Amazon was aware or should have been aware of.

83.     The Plaintiffs relied upon the Amazon Defendants to perform the above-described safety-related services because Plaintiff Stephon Jeter would not have purchased the subject remote through Amazon if he had known Amazon was not the safe and reliable marketplace it held itself out to be. Plaintiff Stephon Jeter purchased the subject remote because he believed it would be more reliable than other similar products because it was sold on Amazon's website. Amazon warranted and promoted the subject remote as being safe and lulled Plaintiff Stephon Jeter —who was unaware it was coming from an unreliable Chinese manufacturer—into a false sense of security. Plaintiff Stephon Jeter trusted that Amazon had confirmed the reliability of Defendant Kallabe and the safety of the subject remote when he purchased the product.

84. Additionally, Amazon's failure to properly vet the safety and reliability of Defendant Kallabe and the subject remote and failure to properly investigate and warn about the dangerous latent condition of the subject remote significantly increased the minor Plaintiff's risk of harm because Plaintiff Stephon Jeter would never have come across the subject remote and purchased it but for its being listed and promoted as a safe product on Amazon's website. Plaintiff Stephone Jeter also would never have come across Defendant Kallabe at all but for Amazon's active provision of logistical assistance to and recruitment of Defendant Kallabe. Similarly, the Plaintiffs would not have used the subject remote on the day M.J. was injured if they had been alerted to the subject remote's danger by Amazon.

85. The aforesaid negligent, grossly negligent, willful, wanton, reckless, and unlawful acts and/or omissions of the Amazon Defendants were the direct and sole proximate cause of the minor Plaintiffs' injuries and damages which include, but are not limited to, past, present and future physical and emotional pain and suffering, mental anguish and emotional distress, permanent disability, physical impairment, disfigurement, loss of bodily function, and other nonpecuniary injuries.

86. The aforesaid negligent, grossly negligent, willful, wanton, reckless, and unlawful acts and/or omissions of the Amazon Defendants were the direct and sole proximate cause of Plaintiffs Rayven Edwards and Stephon Jeter damages which include, but are not limited to, past, present and future medical expenses, lost wages and other out-of-pocket expenses arising out of the injuries sustained by M.J. Plaintiffs have also missed time from work and incurred transportation costs and other

87. The Plaintiffs neither contributed to the negligence which caused the injury nor assumed the risk of the injuries sustained.

WHEREFORE, Plaintiffs, Rayven Edwards and Stephon Jeter, individually and as parents and next friends of M.J., a minor, demand judgment against the Amazon Defendants, jointly and severally, in an amount to exceed $75,000, plus interest, attorneys' fees and the costs of this action, punitive damages and such other relief as this Honorable Court deems just and proper.

Respectfully submitted,

/s/ Steven H. Heisler
Steven H. Heisler, Fed Bar No.: 08698
Law Offices of Steven H. Heisler
1011 N. Calvert Street
Baltimore, Maryland 21202
Telephone: (410) 625-4878
sheisler@injurylawyermd.com

Charles T. Slaughter, Fed. Bar No. 10690
MORGAN, SLAUGHTER & HALTIWANGER, LLC
1156 Bowman Rd., Suite 203
Mount Pleasant, South Carolina 29464
Telephone: (803) 359-6195
chuck@mshfirm.com
*To be Admitted Pro Hac Vice*

Daniel S. Haltiwanger, Fed Bar No. 7544
MORGAN, SLAUGHTER & HALTIWANGER, LLC
135 East Main Street
Lexington, South Carolina 29072
Telephone: (803) 359-6195
dan@mshfirm.com
*To be Admitted Pro Hac Vice*
*ATTORNEYS FOR THE PLAINTIFFS*

24

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

RAYVEN EDWARDS, Individually and
As Parent and Next Friend of M.J., a Minor
4105 West Street NW, Apt. 201
Washington, DC 20007

and

STEPHON M. JETER, Individually and                  Case No.:
as Parent and Next Friend of M.J., a Minor
4105 West Street NW, Apt. 201
Washington, DC 20007

               Plaintiffs,

v.

AMAZON.COM, INC.
410 Terry Avenue North
Seattle, WA 98109

and

AMAZON.COM SALES, INC.
410 Terry Avenue North
Seattle, WA 98109

and

AMAZON.COM SERVICES, LLC
410 Terry Avenue North
Seattle, WA 98109

and

KALLABE INC.
14205 SE 36th St., Suite 100
Bellevue, WA 98006

               Defendants.

## PLAINTIFFS' REQUEST FOR JURY TRIAL

Plaintiffs, Rayven Edwards and Stephon Jeter, individually and as parents and next friends

of M.J., a minor, by and through their undersigned counsel, hereby request a trial by jury on all

issues presented herein.

25

/s/ Steven H. Heisler
Steven H. Heisler, Fed Bar No.: 08698
Law Offices of Steven H. Heisler
1011 N. Calvert Street
Baltimore, Maryland 21202
Telephone: (410) 625-4878
sheisler@injurylawyermd.com